[Civ. No. 14646. First Dist., Div. One. Feb. 7, 1951.]

In re DONALD DANA PANATTONI. DONALD LAWRENCE PANATTONI et al., Appellants, v. LOUISE STRADI DANA, Respondent.

Leo R. Friedman for Appellants.

Bronson, Bronson & McKinnon for Respondent.

BRAY, J.—From an order of the juvenile court declaring Donald Dana Panattoni free from the custody and control of his father, the father and the paternal grandfather appeal.

## QUESTIONS PRESENTED

1. Was the order of the juvenile court setting time and place of hearing the petition and directing citation to issue a compliance with section 721 of the Welfare and Institutions Code?

2. Did the court abuse its discretion in denying a motion for continuance of the hearing?

## FACTS

There is no controversy over the facts. Louise Stradi Dana, the maternal grandmother of Donald, the minor, filed a petition in the juvenile court asking that the minor be freed from the control of his father. It alleged that the father, Donald Lawrence Panattoni, was unfit to have the minor's custody for the reason that the father was now in San Quentin serving a sentence of from five years to life for the murder of his wife, the child's mother, whom he beat to death in a room adjoining that occupied by the child. Other charges of unfitness were also set forth. The petition further alleged that the child was now in the actual custody of petitioner. The same day that the petition was filed, an order of the juvenile court was signed and filed. This order is denominated "Order Setting Time and Place of Hearing of Petition and Directing that Citation Issue." It states: "It appearing that a petition has been filed by Louise Stradi Dana in the above entitled matter, alleging that said Donald Dana Panattoni is a person who should be declared free from the custody and control of Donald Lawrence Panattoni, his father, and praying that the above entitled Court make an order judicially depriving said above named father of the control and custody of said child." After giving the names of the mother and father of the minor and the fact that the mother is dead and the father in San Quentin, it stated that it appears that the child is now in the custody of petitioner "with whom said child was placed by" the father. It then ordered that the hearing of said petition be set for a certain time and place and that a citation should issue requiring the father to appear at the time and place stated, such citation to be served upon the father.

A written opposition to the petition was filed by the father and by Lawrence Panattoni, the paternal grandfather, and

an affidavit by the latter. The answer denied most of the allegations of the petition other than the conviction of the father for the murder of his wife and his incarceration at San Quentin. Both the answer and the affidavit set forth that there was no necessity that the child be declared free of its father for the reason that petitioner had theretofore been appointed guardian of the person and estate of the minor, in a proceeding in which the objectors here had filed a counter-petition seeking such appointment. The affidavit stated that the paternal grandfather and grandmother had filed certain proceedings for the adoption of said minor; that the father had given his consent to such adoption; that the adoption proceedings would be heard as soon as the State Department of Social Welfare had filed its report, and that if such adoption were permitted there would be no necessity for this proceeding. It stated that the sole purpose of this proceeding was to render nugatory the consent of the father to the adoption, and asked that the hearing be continued until after the determination of the adoption proceedings.

The court denied the motion for continuance, and after hearing evidence made its order declaring the minor free from the custody and control of its father.

1. WAS THERE A SUBSTANTIAL COMPLIANCE WITH SECTION 721 OF THE WELFARE AND INSTITUTIONS CODE?

This section, after stating, in effect, that any person may present to the clerk of the superior court a petition asking that a child be declared free from the custody of its parent, states: "Prior to the filing of such petition the probation officer of such county shall make such investigation as he deems necessary, and no petition shall be filed without the approval of the probation officer except by order of the juvenile court."

Appellants contend that the court had no jurisdiction to hear the petition because, admittedly, the record fails to show: (1) a prior investigation by or approval of the probation officer, or (2) an order of the juvenile court which expressly ordered the filing of the petition. Respondent contends that the order setting the hearing and directing citation to issue satisfies the requirements of the section.

Appellants rely on In re Bullock, 139 Cal.App. 664 [34 P.2d 769]. There, the mother had been awarded, in a divorce action, the custody of the minor child, subject to her placing him in a certain military academy. She appealed from that

portion of the decree directing that he be placed in the academy. While the appeal was pending, the father filed a petition in the juvenile court, claiming that the mother had failed to exercise proper parental care and asking that the child be made a ward of the court, free from her custody. The juvenile court granted the petition and the mother appealed. In discussing the question of jurisdiction of the juvenile court to make the order, the opinion states that it did not have such jurisdiction because it did not allege the matters required to give the court jurisdiction. It referred to the requirements of the Juvenile Court Law (the same as the present Welf. & Inst. Code, § 721), and stated: "Furthermore, the report of the probation officer (or the order of court dispensing with it) is jurisdictional. The petition did not allege that such a report was made or excused by order of court. That this is not merely a technical objection is shown by the fact that the record discloses that neither the report nor the order was made and that the probation officer was not even called as a witness." (Pp. 667-668.)

An examination of the record in the Bullock case discloses a rather interesting situation. Neither in the lower court nor in the briefs is there any contention made that because there was neither probation officer approval nor court order, the court did not have jurisdiction. The only contentions discussed were lack of evidence to support the findings, the admissibility of certain evidence, and the insufficiency of the allegations of the petition. The record fails to show how the matter was brought on for hearing in the juvenile court. There is no order of any kind setting the petition for hearing. It is obvious, therefore, that the questions raised by the order in our case were not before the appellate court.

Undoubtedly the purpose of section 721 was to prevent the indiscriminate filing of petitions to declare children free from their parents. Unless the petition has the approval of the probation officer or of the court, it cannot be filed. The section, however, does not require the order of the juvenile court to be in any particular form. The order made here was, in form, more than the ordinary order setting a cause for hearing. It made findings. For example, it found that the child had been placed with the petitioner by the father. Section 723 provides that either the judge or the clerk may set the time for hearing. Thus, it was not necessary to have a court order on the subject. Again, it was not necessary to have the court order that citation issue. Section 726 provides

that upon the filing of the petition a citation shall issue. Hence, it is apparent that this order was, in effect, an approval by the court of the filing of the petition. Technically, of course, the order did not order the filing of the petition, but, finding the matters which it did, certainly constitutes an approval of the petition and its filing. As said by the juvenile court judge: "It would appear to me that the order made by the Court is an order accepting jurisdiction, and reciting the grounds there. The order signed by Judge Devine sets out the facts which would make the situation subject—and I think there is implicit, in that order, the permission to proceed with the petition." To hold that the order failed of the purpose required by section 721 would be to place form above substance. It clearly approved the initiation of the proceeding. The Bullock decision does not conflict with this interpretation of the section and the order.

## 2. No Abuse in Denying Continuance.

█ Appellants' main claim of abuse in this respect is that by going on with the hearing and declaring the child free of the custody of its father the court obviated the necessity of the consent of the father to its adoption, thereby placing, say they, the paternal grandparents in a worse situation than the maternal grandmother, who also has a petition for adoption pending. This does not follow. Actually, it places all parties desiring to adopt the child on an even footing. In the adoption proceedings the court may still take into consideration the father's preference, if it desires, along with other evidence. The court is freed to act in the child's welfare. If, however, our proceeding had been postponed, and the child not freed from paternal control, a father who may be shockingly unfit as a parent would be able to dominate and direct the child's future regardless of its best interests. There was no abuse of discretion in going on with the hearing.

The order is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.